1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10  UNITED STATES OF AMERICA,            CASE NO. 15cr2586-GPC

11                          Plaintiff,   **ORDER DENYING DEFENDANTS'**
                                         **MOTION TO DISMISS**
12          v.                           **INDICTMENT FOR LACK OF**
                                         **JURISDICTION**
13  JARIS JESUS TORRES-ITURRE (1);
    JOSE UBER ESTUPINAN-                 [Dkt. No. 34.]
14  CARABAI (2); ASCENCION
    ROJAS-BOLANOS (3),
15
                          Defendants.
16

17       On January 8, 2016, Defendant Jose Uber Estupinan-Carabali ("Defendant" or

18  "Estupinan") filed a motion to dismiss the indictment for lack of jurisdiction. (Dkt. No.

19  34.)   On January 12, 2016, Defendant Jaris Jesus Torres-Iturre ("Torres") filed a

20  motion for joinder. (Dkt. No. 38.)  At the hearing held on January 22, 2016, Defendant

21  Ascencion Rojas-Bolanos ("Rojas") moved orally to join in the motion.

22       The government filed an opposition. (Dkt. No. 42.)  Defendant filed a reply on

23  January 21, 2016, and the government filed a sur-reply on January 22, 2016.[1]  (Dkt.

24  Nos. 46, 47.)   A hearing was held on January 22, 2016.    (Dkt. No. 54.)   Patrick

25  Bumatay, Esq. appeared on behalf of the government.    (Id.)   Ellis Johnston, Esq.

26

27  ——————————————

28       [1]At the hearing, the Court did not consider the reply or sur-reply since it was
    filed without leave of Court and without sufficient notice to the Court to review.
    However, for purposes of this order, the Court considers these documents.

1    appeared on behalf of Defendant Estupinan, Robert Garcia, Esq. appeared on behalf

2    of Defendant Torres, and John Lemon, Esq. appeared on behalf of Defendant Rojas.

3    (Id.)  At the hearing, the Court granted Torres and Rojas' motions for joinder in the

4    motion, and denied the motion to dismiss based on lack of jurisdiction.  For purposes

5    of the record, the Court presents a more detailed analysis of its reasoning on its ruling

6    denying Defendants' motion to dismiss.

7                                                    **Background**

8           On September 5, 2015, a military patrol aircraft ("MPA") spotted a suspected

9    go-fast vessel[2] ("vessel") traveling in a northerly direction about 128 nautical miles

10   southwest of the Costa Rica/Panama border, in international waters in the Eastern

11   Pacific Ocean.   The MPA continued to observe the vessel which was observed

12   jettisoning objects overboard.  During this observation, the United States Coast Guard

13   ("USCG") Cutter Bertholf was notified and diverted to intercept the vessel.  The

14   Bertholf launched its helicopter and two small boat teams.   One small boat team

15   returned to the Bertholf after having experienced a breakdown.

16          The MPA directed the helicopter to the vessel.  The helicopter hailed the vessel,

17   which failed to stop. The helicopter was authorized to utilize and employed three

18   stitches of warning shots.  After determining that the warning shots were ineffective,

19   the helicopter employed five precision shots to the engine which caused the vessel to

20   stop.  Once stopped, a USCG team from the Bertholf arrived on-scene in a small boat

21   and observed the three Defendants aboard the vessel.  Defendant Torres claimed to be

22   the master of the vessel and made a verbal claim of Ecuadorian nationality for the

23   vessel.  Defendants claimed Colombian nationality for themselves.  Torres stated that

24   he and the crew had initially been contracted as fisherman and were later forced at

25   gunpoint to transport the contraband.

26          The USCG team searched the vessel and found no contraband.  The small boat

27   ─────────────

28        [2]Go-fast vessels are boats that travel at high rates of speed and are preferred
     vehicles for drug and alien smuggling operations. United States v. Perlaza, 439 F.3d
     1149, 1153 n.2 (9th Cir. 2006).

team recovered thirteen (13) bales of suspected contraband from the debris fields where Defendants were seen jettisoning the packages. The 13 recovered bales contained bricks that consisted of about 711 kilograms of a white powdery substance that field-tested positive for cocaine.

On September 5, 2015, pursuant to an agreement between the United States and Ecuador, the United States requested that the government of Ecuador confirm the vessel's registry, and if confirmed, grant authorization to stop, board and search the vessel.  On the same day, the government of Ecuador responded that it could neither confirm nor refute the vessel's registry.  The government determined the vessel to be without nationality or stateless pursuant to 46 U.S.C. § 70502(d)(1)(C)[3] and subject to United States jurisdiction pursuant to 46 U.S.C. § 70502(c)(1)(A).[4]

Defendants arrived in San Diego, California on September 26, 2015.  On October 6, 2016, Defendants were indicted on two counts for conspiracy to distribute cocaine on board a vessel in violation of 46 U.S.C. §§ 70503, 70506(b), and conspiracy to distribute cocaine intended for unlawful importation in violation of 21 U.S.C. §§ 959, 960, and 963.

On October 8, 2015, Defendants pleaded not guilty to the two count indictment. On January 8, 2016, Defendant Estupinan filed a motion to dismiss indictment for lack of jurisdiction. On January 22, 2016, the Court granted Torres and Rojas' motions for joinder in Estupinan's motion.

## Discussion

Defendants move to dismiss the indictment arguing that the United States lacks constitutional jurisdiction over them because the government has not met its evidentiary burden that the vessel the Defendants were on was stateless.   The

---

[3]The term "'vessel without nationality' includes . . . (C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality."  46 U.S.C. § 70502(d)(1)(C).

[4]The term "'vessel subject to the jurisdiction of the United States' includes-- (A) a vessel without nationality. . . ."  46 U.S.C. § 70502(c)(1)(A).

[15cr2586-GPC]

1  government responds that the motion should be denied as premature because the status

2  of the vessel is a question of fact for the jury.

3      The Maritime Drug Law Enforcement Act ("MDLEA") makes it unlawful to

4  "knowingly or intentionally manufacture or distribute, or possess with intent to

5  manufacture or distribute, a controlled substance on board . . . a vessel subject to the

6  jurisdiction of the United States . . . ." 46 U.S.C. § 70503(a)(1).  This provision applies

7  "even though the act is committed outside the territorial jurisdiction of the United

8  States." Id. § 70503(b).  If the MDLEA is applied extraterritorially, then both statutory

9  and constitutional jurisdiction must be satisfied.  United States v. Perlaza, 439 F.3d

10  1149, 1160 (9th Cir. 2006).

11      Under the MDLEA, a vessel "subject to the jurisdiction of the United States"

12  includes (1) a vessel without nationality; (2) a vessel assimilated to a vessel without

13  nationality; (3) a vessel registered in a foreign nation if that nation has consented or

14  waived objection to the enforcement of United States law by the United States; (4) a

15  vessel in the customs waters of the United States; (5) a vessel in the territorial waters

16  of a foreign nation if the nation consents to the enforcement of United States law by the

17  United States; and (6) a vessel in the contiguous zone of the United States that is

18  entering the United States,  has departed the United States, or is a hovering vessel.  46

19  U.S.C. § 70502(c)(1).   The court has statutory jurisdiction over a defendant if the

20  government satisfies at least one of these requirements.  Perlaza, 439 F.3d at 1160.

21      Relevant to this case, a "vessel without nationality" includes the following,

22  (A) a vessel aboard which the master or individual in charge makes a
    claim of registry that is denied by the nation whose registry is claimed;

23
24  (B) a vessel aboard which the master or individual in charge fails, on
    request of an officer of the United States authorized to enforce
    applicable provisions of United States law, to make a claim of
25  nationality or registry for that vessel; and

26  (C) a vessel aboard which the master or individual in charge makes a
    claim of registry and for which the claimed nation of registry does not
27  affirmatively and unequivocally assert that the vessel is of its
    nationality.

28  46 U.S.C. § 70502(d).

[15cr2586-GPC]

1    The government asserts statutory jurisdiction based on a "vessel without

2  nationality" or "stateless vessel"[5] where the "master or individual in charge makes a

3  claim of registry and for which the claimed nation of registry does not affirmatively and

4  unequivocally assert that the vessel is of its nationality."  See id.  Defendants do not

5  challenge whether the government can establish statutory jurisdiction because they

6  assert that issue must be presented at trial.  (Dkt. No. 34-1 at 4.)

7    As to constitutional jurisdiction, due process requires the government to show

8  that there exists "'a sufficient nexus between the conduct condemned and the United

9  States' such that the application of the statute would not be arbitrary or fundamentally

10  unfair to the defendant."  Perlaza, 439 F.3d at 1160 (quoting United States v. Medjuck,

11  156 F.3d 916, 918 (9th Cir. 1998)).  The constitutional nexus requirement is not an

12  express element of the crime but is a "judicial gloss applied to ensure that a defense is

13  not improperly haled before a court for trial."  United States v. Zakharov, 468 F.3d

14  1171, 1177 (9th Cir. 2006) (quoting United States v. Klimavicius-Viloria, 144 F.3d

15  1249, 1257 (9th Cir. 1998)).  However, there is one exception to the constitutional

16  jurisdiction requirement where "[i]f a vessel is deemed stateless, there is no

17  requirement that the government demonstrate a nexus between those on board and the

18  United States before exercising jurisdiction over them."  Perlaza, 439 U.S. at 1161

19  (quoting United States v. Moreno-Morillo, 334 F.3d 819, 829 (9th Cir. 2003)).

20  Therefore, once a vessel is found to be "stateless" the court's jurisdiction inquiry is

21  complete.  Id. at 1161; see also Moreno-Morillo, 334 F.3d at 829 ("the determination

22  of statelessness is essential to and all but dispositive of the purely legal issue of

23  personal jurisdiction").  However, if a vessel is determined to be registered in a foreign

24  nation, then the court determines whether there is sufficient nexus between the vessel

25  and the United States.  Perlaza, 439 F.3d at 1167; see also Zakharov, 468 F.3d at 1177

26  (it is this "court's longstanding rule that the constitutional nexus inquiry is a matter for

27

28    [5]A "vessel without nationality" is also common referred to as a "stateless vessel."
   United States v. Perlaza, 439 F.3d 1149, 1160 (9th Cir. 2006).

1  the court's determination"); Moreno-Morrillo, 334 F.3d at 827-28; Medjuck, 156 F.3d

2  at 918; Klimavicius-Viloria, 144 F.3d at 1257.  The issue in this case is whether the

3  judge or the jury determines whether the vessel is stateless for purposes of

4  constitutional jurisdiction.

5          "Prior to 1996, there was a consensus among the circuits that 'the jurisdictional

6  requirement in section 1903(a)[6] is an element of the crime charged and therefore must

7  be decided by the jury.'"  Moreno-Morillo, 334 F.3d at 828 (quoting United States v.

8  Medjuck, 48 F.3d 1107, 1110 (9th Cir. 1995)).  In 1996, Congress amended the

9  MDLEA to state that "[j]urisdiction of the United States with respect to a vessel . . . is

10 not an element of an offense. Jurisdictional issues arising under this chapter are

11 preliminary questions of law to be determined solely by the trial judge."  46 U.S.C. §

12 70504(a).

13         Subsequent to the amendment, the Ninth Circuit, in analyzing statutory

14 jurisdiction, concluded that whether a go-fast vessel intercepted in extraterritorial

15 waters is stateless is a factual issue that must be resolved by a jury.  Perlaza, 439 F.3d

16 at 1167.[7]  In coming to this holding, the Ninth Circuit noted the statutory language of

17 § 1903(f), now codified as 46 U.S.C. § 70504(a), in conjunction with a defendant's

18 rights under the Fifth and Sixth Amendments.  Id. at 1166. In light of the Fifth and

19 Sixth Amendments, facts underlying the existence of statutory jurisdiction although

20 "'not formally identified as elements of the offense charged' must be submitted to the

21 jury and proved beyond a reasonable doubt."  Id.

22         In Zakharov, the Court reaffirmed the principles in Perlaza stating that despite

23 the MDLEA amendment," 46 U.S.C. § 70504(a), "contested facts underlying the

24 existence of statutory jurisdiction must be resolved by a jury."  United States v.

25 Zakharov, 468 F.3d 1171, 1176 (9th Cir. 2006).  The Zakharov court noted that

26

27         [6] Now codified as 46 U.S.C. § 70503(a).

28         [7]The Ninth Circuit held that the district court erred in determining that the go-
       fast was a stateless vessel based on the  disputed facts.  Perlaza, 439 F.3d at 1165.

1    <u>Perlaza</u>'s holding that contested jurisdictional issues must be resolved by a jury was

2    limited to an analysis of statutory jurisdiction.  <u>Id.</u> at 1176 n. 2.  If facts underlying

3    statutory jurisdiction are not disputed, the issue does not need to be presented to the

4    jury.  <u>Id.</u> at 1176 n. 3.

5         In this case, Defendants agree that the statutory jurisdiction issue, whether the

6    vessel is stateless, must be raised at trial.  However, application of the exception to

7    constitutional jurisdiction, whether the vessel is stateless, necessarily requires a

8    determination whether the vessel is stateless and such an inquiry, as held by <u>Perlaza</u>,

9    must be presented to the jury.  The disputed issue of whether the vessel is stateless is

10   a question of fact for the jury that must be determined before the question of

11   constitutional jurisdiction is addressed.[8]

12        Here, while Defendants claim that the underlying facts are not disputed, the facts

13   are disputed. Defendants argue that the Secretary of State's certificate does not identify

14   which U.S. official contacted Ecuador or who from Ecuador that U.S. official

15   communicated with, how they communicated, and what was said.  It is further claimed

16   that the certificate does  not indicate if the U.S. official accurately communicated the

17   relevant identifying information about the vessel to the government of Ecuador and

18   whether important identifying information was inadvertently excluded.  In addition, it

19   appears that the Ecuadorian government requested additional information from U.S.

20   authorities, such as photographs, specifics about the crew, their destination and serial

21   numbers on the motor, that were never provided by the U.S. authorities.  In response,

22   the government asserts it produced ample evidence of the vessel's statelessness by

23   producing the email communications and "Forms" exchanges between the two

24   countries.  The parties present disputed facts as to whether the vessel is stateless, and

25   thus, this issue must be determined by a jury.  <u>See</u> <u>Perlaza</u>, 419 F.3d at 1167.

26   _____

27        [8]According to Defendants, <u>Perlaza</u> holds that the district court must decide the
     issue of statelessness, and if the court finds that the government can establish
     statelessness, then the court must then allow the jury to reconsider whether the
28   government established statelessness.   The Court disagrees with Defendants'
     interpretation and concludes that such a holding is not asserted in <u>Perlaza</u>.

1
**Conclusion**

2      Based on the above, the Court DENIES Defendants' motion to dismiss the

3  indictment.

4      IT IS SO ORDERED.

5

6  DATED: March 10, 2016

7                                           HON. GONZALO P. CURIEL

8                                           United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28